IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robin Dulin,                          :
                    Petitioner        :
                                      :
        v.                            :   No. 368 C.D. 2023
                                      :
Unemployment Compensation             :
Board of Review,                      :
                    Respondent        :   Submitted:  March 8, 2024

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                    FILED:  March 25, 2024

Robin Dulin (Claimant) petitions for review, *pro se*, of the March 2, 2023 Order of the Unemployment Compensation Board of Review (Board), which affirmed the decision of a Referee dismissing her appeal as untimely.  We affirm.

## **Background**

Claimant filed an application for unemployment compensation (UC) benefits effective January 16, 2022, based on her separation from employment with Veterans Administration (Employer).  Bd.'s Finding of Fact (F.F.) Nos. 1, 3.  Claimant selected "internal message with email notification" as her preferred method of receiving notifications about her UC application.  *Id.* No. 2; Record (R.) Item No. 1.

On May 11, 2022, the Department of Labor and Industry (Department) emailed a Disqualifying Separation Determination (Determination) to Claimant, notifying her that she was disqualified from receiving UC benefits under Section

402(b) of the Unemployment Compensation Law (Law)[1] because the Department determined that Claimant "left [her] employment to retire" and that "[c]ontinuing work was available to [her]." Bd.'s F.F. No. 3; R. Item No. 3.[2] The Determination included appeal instructions, which stated that the last day to file a timely appeal was June 1, 2022. Bd.'s F.F. No. 4.[3] The Determination also stated:

> Pursuant to [S]ection 401(f) of the Law [43 P.S. § 801(f)], this disqualification remains in effect until [C]laimant has earned, subsequent to the disqualifying separation identified in this determination, remuneration for services in an amount equal to or in excess of six (6) times his or her weekly benefit rate in "employment" as defined in [the Law].

*Id.* No. 5; R. Item No. 3.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b). Section 402(b) of the Law provides that an employee is ineligible for UC benefits for any week "[i]n which [her] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." 43 P.S. § 802(b).

[2] In Finding of Fact Number 3, the Board found that the Department "mailed" the Determination to Claimant's "last known post office address." Bd.'s F.F. No. 3. This appears to be an error, because the Board also found that Claimant selected "internal message with email notification" as her preferred method of receiving notifications about her UC application, *id.* No. 2, and that the Department sent the Determination to Claimant "via [her] preferred notification method," Ref.'s Order, 10/14/22, at 5; Bd.'s Order, 3/2/23, at 1. In any event, whichever method the Department used to issue the Determination to Claimant, Claimant does not dispute that she received it or that she received it in a timely fashion.

[3] The Determination stated:

**You have the right to appeal this [D]etermination.**
You have 21 days from the [D]etermination date on this letter to file an appeal.
This means your appeal **must be received or postmarked** by **06/01/2022.**

R. Item No. 3 (bold in original). It also stated at the top of the page: "**Final Date to Appeal: 6/1/2022.**" *Id.* (bold in original).

Previously, Claimant underwent surgery, chemotherapy, and radiation treatment for cancer; her treatment ended in April 2022. Bd.'s F.F. No. 6. At the time she received the Determination, Claimant was still under a physician's care, undergoing routine testing, taking various medications, and attending follow-up medical appointments. *Id.* Nos. 7-8. Claimant was initially confused by the Determination and took note of the language stating that she could work and earn six times her weekly benefit rate and purge the disqualification. *Id.* No. 9.

Sometime between June and July 2022, Claimant spoke with a UC representative by telephone regarding the purge provision referenced in the Determination. *Id.* No. 10. The UC representative did not discuss an appeal with Claimant at that time. *Id.* No. 11. Thereafter, Claimant had difficulty reaching a UC representative by telephone due to high call volume. *Id.* No. 12.

On September 18, 2022, Claimant spoke with a different UC representative by telephone,[4] who informed Claimant that her intervening employment could not be used to purge the disqualification and suggested that Claimant file an appeal. *Id.* No. 13. Claimant filed her appeal that day. *Id.* No. 14. The Department received her appeal on September 18, 2022. *Id.* No. 15.

The Referee held a telephone hearing on October 13, 2022. Claimant appeared and testified on her own behalf. Employer did not appear.

Following the hearing, the Referee concluded, in pertinent part, as follows:

> [W]hile the Referee notes and credits the Claimant's testimony regarding the serious health condition [she] was dealing with at the time of the issuance of the Determination and her confusion regarding the

---

[4] At the hearing, Claimant testified that this phone call took place on September 2, 2022. Notes of Testimony (N.T.), 10/13/22, at 6-7. However, Claimant also testified that she filed her appeal the day she spoke with the UC representative, *id.* at 6, and the record shows that her appeal was filed on September 18, 2022, R. Item No. 4.

[D]etermination and inability to timely reach a UC representative to discuss the matter, the Referee unfortunately cannot conclude that these issues prevented [her] from filing a timely appeal and notes the substantial delay in the Claimant submitting her appeal, in excess of three months.

While the UC . . . representative who spoke with the Claimant in June/July 2022[] discussed the purge provisions of the Law and may not have advised the Claimant of her right or need to file an appeal, *the record does not indicate that the UC representative misled the Claimant in . . . regard to the need for or timing of an appeal should the Claimant disagree with the disqualifying determination.*

*. . . [T]here is no competent evidence in the hearing record to establish that the Claimant was prevented from filing a timely appeal due to fraud, a breakdown in the administrative process, or . . . non-negligent conduct on [her] part.*

Ref.'s Order, 10/14/22, at 4 (emphasis added). Therefore, the Referee dismissed Claimant's appeal as untimely.

Claimant appealed to the Board, which adopted and incorporated the Referee's findings of fact and conclusions of law. The Board also made the following additional findings and conclusions:

[C]laimant was not misled or misinformed regarding her appeal rights or the need to file a timely appeal.

The Board concludes that based on [C]laimant's testimony, she confused the purge provisions of the Law with the appeal deadline. While the Board is sympathetic to [C]laimant's health situation, the Board cannot conclude that [her] confusion over the appeal deadline shows that she is entitled to *nunc pro tunc* relief. Indeed, in her appeal to the Board, [C]laimant indicates, "I am now able to clearly read and understand the timeliness of this appeal. Due to the information in the [Referee's] decision 'finding[s] of fact,' my understanding of the date and process wasn't clear at that time." This reinforces the Referee's conclusion that [C]laimant was confused about the appeal process, *but*

4

*her misunderstanding or confusion over the process does not rise to the level of fraud, administrative breakdown, or non-negligent conduct.*

Bd.'s Order, 3/2/23, at 2 (emphasis added). Therefore, the Board affirmed the Referee's decision. Claimant now petitions this Court for review.[5]

## **Analysis**

The sole issue before this Court is whether Claimant's untimely appeal was caused by an administrative breakdown justifying an appeal *nunc pro tunc*. Section 501(e) of the Law, 43 P.S. § 821(e), provides that an aggrieved party has 21 days to appeal from a Department determination.[6] This Court has held that if an aggrieved party does not file an appeal within 21 days (formerly 15 days) of the mailing date of the determination, the decision becomes final, and the Referee lacks jurisdiction to consider the merits of the appeal. *See Hessou v. Unemployment Comp. Bd. of Rev.*, 942 A.2d 194, 197-98 (Pa. Cmwlth. 2008). An appeal filed even one day after the appeal deadline is untimely. *Id.* at 198; *see DiBello v. Unemployment Comp. Bd. of Rev.*, 197 A.3d 819, 822 (Pa. Cmwlth. 2018).

The Referee may consider an untimely appeal only in extraordinary circumstances. *Roman-Hutchinson v. Unemployment Comp. Bd. of Rev.*, 972 A.2d 1286, 1288 n.1 (Pa. Cmwlth. 2009). An appeal *nunc pro tunc* may be allowed where the delay in filing the appeal was caused by fraud, a breakdown in the administrative process, or non-negligent circumstances related to the claimant, his attorney, or a

---

[5] Where, as here, the party with the burden of proof was the only party to present evidence and did not prevail below, our review is limited to determining whether the Board capriciously disregarded competent evidence and whether there was a constitutional violation or an error of law. *Constantini v. Unemployment Comp. Bd. of Rev.*, 173 A.3d 838, 842 n.4 (Pa. Cmwlth. 2017).

[6] The General Assembly recently amended Section 501 of the Law to extend the appeal period from 15 days to 21 days; the amendment became effective on July 24, 2021, ten months before the Department issued its Determination in this case.

5

third party. *Cook v. Unemployment Comp. Bd. of Rev.*, 671 A.2d 1130, 1131 (Pa. 1996). However, "the [claimant] bears a heavy burden to justify an untimely appeal." *Roman-Hutchinson*, 972 A.2d at 1288 n.1.

Here, it is undisputed that Claimant's appeal from the Department's Determination was untimely. The Determination clearly stated, in bold typeface, that the last day to file an appeal was June 1, 2022. R. Item No. 3. At the hearing, Claimant admitted that she did not file an appeal by the June 1, 2022 deadline. N.T., 10/13/22, at 4. Rather, Claimant filed her appeal more than three months later, on September 18, 2022. Bd.'s F.F. No. 15.

Before this Court, Claimant contends that her late appeal was caused by an administrative breakdown. Specifically, she asserts: "I have followed all the instructions after speaking to the UC representatives. I have timely filed all requested information to the [Board] and to this Court. My intent was to get direction from the [UC] representatives to process my claim and to be provided with my options." Claimant's Br. at 7. She further asserts that "filing an appeal was not an option when [she] called for direction after receiving the disqualifying determination," referencing her initial telephone call in June or July 2022 with a UC representative. Pet. for Rev. at 2.

To establish an administrative breakdown justifying a *nunc pro tunc* appeal, the claimant must show that the Department provided misinformation regarding the availability of, timing of, or need for an appeal. *Greene v. Unemployment Comp. Bd. of Rev.*, 157 A.3d 983, 992 (Pa. Cmwlth. 2017). As to this issue, our Court has explained: "Necessity-of-appeal type cases involve statements or actions suggesting that an appeal is not allowed, an appeal could wait, or further corrective action is unnecessary." *Id.* at 991. Further, "not every misstatement by an apparently

6

authoritative person will justify a *nunc pro tunc* appeal; rather, *the misinformation must relate to the availability, timing or need for an appeal*." *Id.* at 992 (emphasis added).

Here, the record establishes that, during Claimant's first conversation with a UC representative in June or July 2022, they did not discuss an appeal. Bd.'s F.F. Nos. 10-11. Claimant testified, and the Board found, that she called the UC representative to inquire about the purge provision of the Law referenced in the Determination. N.T., 10/13/22, at 4; Bd.'s F.F. No. 10. There is no evidence that Claimant asked the UC representative during that conversation about an appeal or that the UC representative provided her any information about the appeal process.[7]

Moreover, Claimant's deadline to file a timely appeal, as explicitly stated on the Determination, was June 1, 2022. Bd.'s F.F. No. 4; R. Item No. 3. The Board found that Claimant spoke with the first UC representative "sometime between June and July 2022." Bd.'s F.F. No. 4. Unless Claimant spoke with the UC representative *on June 1, 2022*, which the record does not establish, then we can reasonably presume that Claimant likely called the UC representative *after* the appeal deadline had already passed. *See Greene*, 157 A.3d at 992 (recognizing that "almost all the cases where a *nunc pro tunc* appeal was allowed involve statements attributed to compensation authorities *after* the issuance of a notice of determination and *during* the period when an appeal is allowed) (emphasis in original).

In support of her administrative breakdown claim, Claimant asserts that her "intent was to get direction from the [UC] representatives to process [her] claim and

_____

[7] In her appellate brief, Claimant asserts, for the first time, that her initial telephone call with a UC representative occurred "in May 2022." Claimant's Br. at 6. However, based on Claimant's own testimony, the Board found that this call occurred "sometime between June and July 2022." Bd.'s F.F. No. 10; *see* N.T., 10/13/22, at 7.

7

to be provided with [her] options," suggesting that the first UC representative failed to inform her about her appeal rights. Claimant's Br. at 7. However, the Department's Determination provided Claimant with the relevant information regarding her right to appeal, the deadline to appeal, and how to appeal. *See* R. Item No. 3. Although Claimant credibly testified that she was confused about the Determination, there is no evidence that she inquired about the appeal language in the Determination when she spoke with the first UC representative in June or July 2022. More importantly, for purposes of satisfying her burden of proof, Claimant failed to establish that the first UC representative misled her or provided misinformation about the availability of, timing of, or need for an appeal. *See Greene*, 157 A.3d at 992 (denying *nunc pro tunc* relief to a claimant who filed a late appeal where "there [we]re simply *no statements attributable to* [*UC*] *authorities that address*[*ed*] *the availability, timing or need for an appeal*") (emphasis added). The Board found, based on the credible evidence of record, that Claimant's late filing was caused by her misunderstanding or confusion over the process, which does not amount to an administrative breakdown. Bd.'s Order, 3/2/23, at 2; *cf. Hessou*, 942 A.2d at 198 (stating that our Court has held that *nunc pro tunc* relief may be granted "when[] a referee's decision is mailed to an incorrect address; adequate assistance is not provided to a claimant with cognitive impairment; or[] an official misleads a litigant as to the proper procedure for filing an appeal").

We conclude that Claimant failed to satisfy her heavy burden of proving that her late appeal was caused by an administrative breakdown because: (1) Claimant's initial telephone call with the UC representative likely occurred after the appeal deadline; (2) there is no evidence that, during the June or July 2022 telephone conversation, the UC representative provided any misinformation to Claimant about

8

her right or need to appeal; and (3) the Determination provided Claimant with all of the relevant information regarding the appeal process. While we sympathize with Claimant's ongoing health struggles, we cannot conclude that her late appeal was caused by an administrative breakdown.[8] *See Carney v. Unemployment Comp. Bd. of Rev.*, 181 A.3d 1286, 1288 (Pa. Cmwlth. 2018) ("The pressure of life events is . . . insufficient to excuse an untimely [UC] appeal."); *see also Rabe v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 1785 C.D. 2013, filed Feb. 24, 2014) (denying *nunc pro tunc* relief to a claimant who was dealing with financial stress and multiple pending court cases during the appeal period); *Menges v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 2230 C.D. 2009, filed Apr. 22, 2010) (holding that a claimant dealing with a death in the family and the lingering effects of a medical condition failed to justify a *nunc pro tunc* appeal).[9]

## Conclusion

We conclude, based on the evidence of record, that Claimant filed her appeal with the Referee beyond the 21-day appeal deadline and failed to establish that her

---

[8] In the proceedings before the Referee and the Board, Claimant also asserted – in addition to claiming an administrative breakdown – that her appeal was untimely because of her health issues. *See* R. Item Nos. 4, 10; N.T., 10/13/22, at 4. To the extent Claimant attempts to invoke the timeliness exception for non-negligent circumstances, we reject that claim. Our Supreme Court has held: "The exception for allowance of an appeal *nunc pro tunc* in non-negligent circumstances is meant to apply only in unique and compelling cases in which the [claimant] has clearly established that *she attempted to file an appeal, but unforeseeable and unavoidable events precluded her from actually doing so*." *Criss v. Wise*, 781 A.2d 1156, 1160 (Pa. 2001) (emphasis added). Here, the record contains no evidence that Claimant attempted to file an appeal prior to September 18, 2022 but was precluded from doing so.

[9] We may cite unreported panel decisions as persuasive authority pursuant to Section 414(a) of our Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

late appeal was caused by an administrative breakdown.  Accordingly, we affirm the Board's Order.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robin Dulin, :
          Petitioner :
 :
   v. : No. 368 C.D. 2023
 :
Unemployment Compensation :
Board of Review, :
          Respondent :

## **O R D E R**

AND NOW, this 25th day of March, 2024, the March 2, 2023 Order of the Unemployment Compensation Board of Review is hereby AFFIRMED.


                    ELLEN CEISLER, Judge